UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
Troy Steinbergin,

                                                                 ***AMENDED COMPLAINT***
                                                                  ***AND JURY DEMAND***

                           Plaintiff,

        -against-                                                 ECF CASE
                                                                    Docket No. 19-cv-01314 (JMF)

City of New York, individually and in their official
capacities as New York City police officers, Jamal
Hairston, Undercover Officer 0076, Undercover Officer
0039, and John or Jane Doe 1-10,

                                         Defendants.

-----------------------------------------------------------------------X

       Plaintiff, Troy Steinbergin, by and through the undersigned attorneys, Sim & DePaola, LLP, for his complaint against the Defendants, City of New York, individually and in their official capacities as New York City police officers, Jamal Hairston, Undercover Officer 0076, Undercover Officer 0039, and John or Jane Doe 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. § 1988 for the violations of his civil rights protected by the Fourth and Fourteenth Amendments, in addition to violations of his rights under the Laws of the State of New York.

2.     These claims arise from a June 21, 2014 incident, in which defendants, acting under color of state law, unlawfully arrested and detained Mr. Troy Steinbergin. Mr. Steinbergin was subsequently maliciously prosecuted and wrongfully convicted after a trial by jury. Mr. Steinbergin appealed his conviction to the Supreme Court, Appellate Division, First Department, who, by unanimous decision, reversed his conviction, granted his motion to suppress the

confirmatory identification, and remanded the matter for a new trial to be preceded by an independent source hearing. The New York County District Attorney's Office declined to retry Mr. Steinbergin, and instead, moved to dismiss his case. As a result, all criminal charges against Mr. Steinbergin were dismissed and sealed on October 9, 2018, representing a favorable termination of the criminal proceedings.

3. The above referenced acts caused Mr. Steinbergin to be deprived of his liberty, to be denied the due process of law and to sustain various emotional and physical injuries. Mr. Steinbergin was wrongfully detained and incarcerated for approximately forty-one (41) consecutive months, from the date of his arrest, up to, and until, his release from New York State prison on, or about, November 16, 2017.

4. Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

5. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the Laws of the State of New York.

6. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

7. Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

8.   Plaintiff, Troy Steinbergin ("Mr. Steinbergin"), resides in New York, County and State of New York.

9.   The Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

10.  At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

11.  In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

12.  Defendant, Jamal Hairston ("Hairston") was, at all relevant times herein, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Hairston was, at all relevant times herein, a police officer or detective under Tax Reg. No. 941875 in Narcotics Borough Manhattan North, located at One Police Plaza, 11th Floor, New York, New York 10038. Defendant Hairston is being sued in his individual and official capacities.

13.  Defendant, Undercover Officer 0076, ("0076") was, at all relevant times herein, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant 0076 was, at all relevant times herein, a police officer, undercover officer or detective, under shield number 0076, at One Police

Plaza, Room 110C, New York, New York 10038. Defendant 0076 is being sued in his or her individual and official capacities.

14. Defendant, Undercover Officer 0039, ("0039") was, at all relevant times herein, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant 0039 was, at all relevant times herein, a police officer, undercover officer or detective, under shield number 0039, at One Police Plaza, Room 110C, New York, New York 10038. Defendant 0039 is being sued in his or her individual and official capacities.

15. At all relevant times, Defendants John or Jane Doe 1 through 10 were police officers, detectives, supervisors, policymakers and/or officials employed by the City of New York or NYPD. At this time, Plaintiff does not know the true names or tax registry numbers of Defendants 0076, 0039 or John or Jane Doe 1 through 10, but believes such information is known to defendants.

16. At all relevant times herein, Defendants John or Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York or the NYPD. Defendants John or Jane Doe 1 through 10 are being sued in their individual and official capacities.

17. At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

18. Within 90 days of accrual dates for these claims, Plaintiff timely filed a written notice of claim with the New York City Office of the Comptroller.

19. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

20. Plaintiff has complied with municipal defendant's request to be examined pursuant to New York State G.M.L. § 50 (h) and all other conditions precedent required to commence the following causes of action.

21. This action has been commenced within one year and ninety days from the relevant accrual dates.

## FACTUAL CHARGES

22. On June 21, 2014, at approximately 7:15 p.m., Mr. Steinbergin was having a friendly and innocuous conversation with three individuals, who formerly resided in his apartment building.

23. Said conversation occurred in close proximity to his apartment building residence, which is located at 1760 Lexington Avenue, County and State of New York.

24. As this conversation between former neighbors was taking place, Mr. Steinbergin was approached by Defendant Hairston.

25. Immediately after approaching Mr. Steinbergin, Defendant Hairston inquired as to whether Mr. Steinbergin knew an individual named "Jamal."

26. Mr. Steinbergin replied that he did not know of any individual by the name of "Jamal."

27. Defendant Hairston then placed handcuffs on Mr. Steinbergin in an excessively tight fashion.

28. Mr. Steinbergin was then forcibly detained, while handcuffed and under arrest, for approximately five (5) minutes.

29. During this period of time, Mr. Steinbergin was subjected to an illegal search on a public sidewalk that was conducted in extremely close proximity to his residence.

30. Said search yielded nothing of probative value related to his unlawful arrest and detention, such as prerecorded buy money ("PRBM") or contraband of any kind.

31. Approximately five (5) minutes after Mr. Steinbergin was stopped and arrested without any reasonable suspicion or probable cause, Defendant 0076 allegedly performed a confirmatory identification, purportedly identifying Mr. Steinbergin as the individual who sold a small quantity of cocaine to Defendant 0076.

32. Mr. Steinbergin alleges that Defendant 0076 either failed to perform a confirmatory identification, whatsoever, that 0076 informed Defendant Hairston that the wrong individual was handcuffed, only to later become complicit in the scheme to falsely arrest and maliciously prosecute Mr. Steinbergin, or that 0076 intentionally made the false confirmatory identification, despite being fully aware that Mr. Steinbergin had committed no crimes or violations of the law.

33. Mr. Steinbergin was unlawfully arrested, as a matter of law, because his arrest occurred prior to the confirmatory identification and Defendant Hairston admittedly did not observe the sale transpire.

34. Mr. Steinbergin was also unlawfully arrested, because Defendants, including Hairston, 0076 and 0039, were fully aware that Mr. Steinbergin was not the individual, who allegedly sold a quantity of cocaine to Defendant 0076.

35. Mr. Steinbergin was then removed to a police van and taken to the 25th Precinct by Defendants, including Hairston.

36. Upon arrival at the 25th Precinct, Mr. Steinbergin was criminally processed by Defendants, including Hairston.

37. Defendants, including Hairston, subjected Mr. Steinbergin to an illegal strip-search and cavity inspection, which, again, yielded nothing of probative value.

38. Said strip-search and cavity inspection was unlawfully conducted, because Mr. Steinbergin was never observed secreting contraband within his person and defendants did not

possessed a reasonable suspicion or other particular justification to perform such an invasive search of Plaintiff's person.

39. Mr. Steinbergin was then transferred to New York County Criminal Court, where he was held until he was arraigned on a single felony count of Criminal Sale of a Controlled Substance in the Third Degree.

40. The accusatory instrument, also referred to as a Criminal Court Complaint, annexed hereto as Exhibit One, was signed by Defendant Hairston, who was fully aware that the contents thereof were predicated on complete fabrications, as well as events and observations that never occurred.

41. Defendant Hairston swore, under the penalties of perjury that Defendant 0076 informed him that Mr. Steinbergin sold "three folded pieces of aluminum foil containing cocaine in exchange for $30 US Currency."

42. Defendant Hairston swore to the truth of the allegations within the criminal complaint, despite being fully aware of said allegations' specious nature.

43. As per the NYPD laboratory analysis report, the three (3) folded pieces of aluminum foil contained less than one (1) gram of cocaine, cumulatively.

44. Mr. Steinbergin vehemently denies that he was involved in the alleged criminal transaction.

45. Mr. Steinbergin asserts that Defendants, including Hairston, 0076 and 0039, arrested and detained him with the full knowledge that he committed no crimes or violations of the law.

46. Defendants, including Hairston, 0076 and 0039, either targeted and predicated Mr. Steinbergin's arrest on entirely fabricated accounts and observations regarding an alleged criminal sale, or if the alleged sale did actually occur, Defendant Hairston targeted and arrested

Mr. Steinbergin only after concluding that the true suspect had escaped, or Defendant Hairston became aware of his erroneous arrest of Mr. Steinbergin after the confirmatory identification by 0076.

47. Mr. Steinbergin further asserts that Defendants, including Hairston, 0076 and 0039, despite their knowledge that he committed no crimes or arrestable offenses, proceeded to intentionally, knowingly and maliciously provide the District Attorney's Office with the aforementioned false information, so that a criminal prosecution would be initiated against him.

48. During Mr. Steinbergin's arraignment on the accusatory instrument, the arraigning judge set bail in an amount that he would never be able to post.

49. Mr. Steinbergin was thereafter transferred to the Manhattan Detention Complex, known colloquially as "The Tombs."

50. Mr. Steinbergin was unlawfully incarcerated at "The Tombs" for approximately three (3) to four (4) months, until he was transferred to Rikers Island Correctional Facility.

51. Mr. Steinbergin remained incarcerated on Rikers Island until approximately December 14, 2015, when he was transferred to an upstate prison facility, where he would serve the remainder of his sentence.

52. For the duration of Mr. Steinbergin's unlawful detainment, he was subjected to over two hundred (200) strip-searches with attendant cavity inspections, as well as caused to suffer various other indignities and hardships related to his wrongful imprisonment.

53. During Mr. Steinbergin's wrongful incarceration at various New York City correctional facilities, his criminal prosecution progressed on the inevitable path to trial.

54. While incarcerated, Mr. Steinbergin was indicted and, ultimately, convicted after a trial by jury.

55. Upon information and belief, Defendant Hairston was the only defendant to testify before the Grand Jury.

56. Upon information and belief, Defendant Hairston knowingly, intentionally and maliciously provided false, incomplete and misleading testimony to the Grand Jury, namely, the specious claims that Mr. Steinbergin sold a quantity of cocaine to Defendant 0076 and that Defendant 0076 subsequently performed a confirmatory identification verifying Defendant Hairston's stop and arrest of the actual seller.

57. As a result, Mr. Steinbergin asserts that Defendants, including Hairston, 0076 and 0039, procured his indictment via the use of fraud, perjury, the suppression of evidence and other police conduct undertaken in bad faith.

58. Specifically, it is alleged that Defendant Hairston knowingly testified falsely that he was informed by Defendant 0076 that Mr. Steinbergin sold Defendant 0076 a small quantity of cocaine.

59. It is further alleged that Defendants, including Hairston, 0076 and 0039, were fully aware, at all times prior and/or subsequent to Defendant 0076's alleged confirmatory identification, that Mr. Steinbergin was not the suspected criminal seller and that Defendant Hairston stopped and handcuffed the wrong individual.

60. Despite this knowledge, Defendants, including Hairston, 0076 and 0039, proceeded to illegally detain and maliciously prosecute Mr. Steinbergin in an obvious attempt to conceal either their unlawful intentional acts or their egregious error and immense waste of NYPD resources.

61. Mr. Steinbergin asserts that Defendants,' including Hairston's, 0076's and 0039's, devious, nefarious and disingenuous conduct is attributable to their fear of the adverse

ramifications they would incur if they concluded their operation without an arrest or if their unlawful actions were discovered.

62. Defendants, including Hairston, 0076 and 0039, arrested and initiated the prosecution against Mr. Steinbergin to obtain an additional arrest credit and to acquire additional compensation at the increased overtime rate of time-and-one-half.

63. Defendants, including Hairston, 0076 and 0039, while fully aware that they had accused and arrested an innocent man, and under the belief that the true perpetrator, if one even existed, had evaded them, chose to subvert and abuse the criminal justice process by engaging in their self-serving, illegal and reprehensible conduct.

64. After Mr. Steinbergin's indictment, a probable cause hearing was held, where the presiding judge determined that Mr. Steinbergin was arrested without probable cause the moment Defendant Hairston placed him in handcuffs.

65. The judge further determined that probable cause to arrest Mr. Steinbergin manifested only after the alleged confirmatory identification by Defendant 0076.

66. In a perplexing turn of events, and despite the judge's probable cause determination, the confirmatory identification was not precluded as the result of Mr. Steinbergin's unlawful arrest and seizure.

67. On April 22, 2015, Mr. Steinbergin was convicted by a trial jury of Criminal Sale of a Controlled Substance in the Third Degree.

68. This conviction was obtained solely through Defendants,' including Hairston's, 0076's and 0039's, knowingly false testimony, namely that Mr. Steinbergin sold a quantity of cocaine to Defendant 0076.

69. Upon information and belief, it is undisputed that Defendant 0076's testimony was the only evidence that established Mr. Steinbergin as the alleged seller, as no other defendant is believed to have observed the alleged sale take place.

70. Mr. Steinbergin asserts that Defendants, including Hairston and 0076, knowingly and intentionally informed the trial jury that Mr. Steinbergin sold Defendant 0076 cocaine, when they were fully aware that he committed no such act.

71. After his conviction, Mr. Steinbergin filed numerous *pro se* motions, as well as a notice of appeal that was filed on November 30, 2015.

72. Mr. Steinbergin eventually obtained representation through the Office of the Appellate Defender.

73. On, or about November 30, 2015, Mr. Steinbergin was sentenced to four (4) years of incarceration and three (3) years of post-release supervision.

74. On, or about, November 16, 2017, Mr. Steinbergin completed his sentence and was released from prison to be placed under the supervision of the Board of Parole.

75. On March 27, 2018, the New York State Supreme Court, Appellate Division, First Department, by unanimous decision, annexed hereto as Exhibit Two, reversed Mr. Steinbergin's conviction, on the law, granted his motion to suppress the confirmatory identification by Defendant 0076, and remanded the matter for a new trial to be preceded by an independent source hearing.

76. The New York County District Attorney's declined to retry Mr. Steinbergin and moved for a complete dismissal of all criminal charges.

77. The District Attorney's motion to dismiss was granted, and all criminal charges levied against Mr. Steinbergin were dismissed and sealed on October 9, 2018, by the Hon. Scherzer, A.,

then a judge of the New York State Supreme Court for New York County. A copy of Mr. Steinbergin's Certificate of Disposition is annexed hereto as Exhibit Three.

78. Upon information and belief, the District Attorney's Office declined to retry Mr. Steinbergin, because they lacked the requisite probable cause to believe he was guilty or that a prosecution would succeed.

79. Upon information and belief, the District Attorney's Office lacked the aforementioned probable cause, because the identification performed by Defendant 0076 was suppressed (due to the lack of probable cause to initially arrest him), and because they were unable to produce an independent source for Mr. Steinbergin's identification as the alleged seller.

80. Accordingly, Defendants, including Hairston, 0076 and 0039, in addition to being aware of Mr. Steinbergin's complete innocence, either knew, or should have known that a criminal prosecution against Mr. Steinbergin could never succeed due to their illegally procured identification and the absence of any other viable identification source.

81. Mr. Steinbergin, therefore, asserts that due to the glaring and pervasive absence of any viable probable cause to warrant his detention or subsequent prosecution, at any point, he was unlawfully detained and maliciously prosecuted from the moment he was handcuffed by Defendant Hairston, up to, and until the ultimate dismissal of his criminal charges.

82. Mr. Steinbergin also asserts that his rights, under the United States Constitution and the laws of the State of New York, were further violated, even after his release from prison.

83. Mr. Steinbergin's assertion is founded upon his court sentenced mandatory post-release supervision, which compelled him to report to a parole officer and placed other restrictions on his liberty and freedom of movement, which persisted until the dismissal of Mr. Steinbergin's criminal charges on October 9, 2018.

84. At all times relevant hereto, the Defendants, including Hairston, 0076 and 0039, were involved in the decision to arrest Plaintiff without probable cause, or failed to intervene when they observed others arresting Plaintiff without probable cause.

85. At all times relevant hereto, the Defendants, including Hairston, 0076 and 0039, acted maliciously and with intent to injure Plaintiff.

86. At all times relevant hereto, the Defendants, including Hairston, 0076 and 0039, engaged in fraud, perjury, the suppression of evidence and other actions conducted in bad faith, or failed to intervene when defendants observed others doing so, all in furtherance of Plaintiff's malicious criminal prosecution and eventual wrongful conviction.

87. As a direct and proximate result of the acts of Defendants, including Hairston, 0076 and 0039, Plaintiff sustained the following injuries and damages: deprivations of his rights pursuant to the Fourth and Fourteenth Amendment of the United States Constitution, violations of the laws and Constitution of the State of New York, physical injury, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of liberty and harm to reputation.

**FIRST CAUSE OF ACTION**
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

88. Plaintiff re-alleges and re-avers Paragraphs 1 through 88 of this Complaint as if fully set forth herein.

89. At all relevant times, the Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

90. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

91. At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

92. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
Malicious Prosecution Under
New York State Law

93. Plaintiff re-alleges and re-avers Paragraphs 1 through 93 of this Complaint as if fully set forth herein.

94. Defendants initiated the prosecution against Plaintiff.

95. Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

96. Defendants acted with malice.

97. In the absence of probable cause, malice may be inferred.

98. The prosecution was terminated in Plaintiff's favor.

99. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered significant damages.

100. Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

101. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

102. Plaintiff re-alleges and re-avers Paragraphs 1 through 102 of this Complaint as if fully set forth herein.

103. Defendants initiated the prosecution against Plaintiff.

104. Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

105. Defendants acted with malice.

106. The prosecution was terminated in Plaintiff's favor.

107. Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by causing Plaintiff to remain unlawfully incarcerated after his arraignment and trial by jury

108. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

109. Plaintiff re-alleges and re-avers Paragraphs 1 through 109 of this Complaint as if fully set forth herein.

110. Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

111. Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

112. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

113. Plaintiff re-alleges and re-avers Paragraphs 1 through 113 of this Complaint as if fully set forth herein.

114. Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

115. Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

116. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

117. Plaintiff re-alleges and re-avers Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

118. Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

119. Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

120. Defendants intended to inflict substantial harm upon Plaintiff.

121.   Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

122.   Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

123.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SEVENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

124.   Plaintiff re-alleges and re-avers Paragraphs 1 through 124 of this Complaint as if fully set forth herein.

125.   Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

126.   Defendants had no excuse or justification to forcibly detain and initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

127.   Defendants intended to inflict substantial harm upon Plaintiff.

128.   Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

129.   Defendants' actions deprived Plaintiff of his right to be free from illegal searches and seizures, as well as his right not to be deprived of his liberty without due process of law.

130.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### EIGHTH CAUSE OF ACTION
Denial of Right to Fair Trial Under

New York State Law

131.  Plaintiff re-alleges and re-avers Paragraphs 1 through 131 of this Complaint as if fully set forth herein.

132.  Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded that false information to the New York County District Attorney's Office.

133.  Defendants' actions deprived Plaintiff of his right to a fair trial and caused him to be wrongfully convicted and further incarcerated for a crime he did not commit.

134.  As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

135.  Plaintiff re-alleges and re-avers Paragraphs 1 through 135 of this Complaint as if fully set forth herein.

136.  Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded that false information to the New York County District Attorney's Office.

137.  Defendants violated Plaintiff's right to a fair trial, pursuant to Article 6 of the United States Constitution, by fabricating false evidence to be used against Plaintiff and by forwarding that false information to prosecutors.

138.  Defendants' unlawful acts caused Plaintiff to be wrongfully convicted after a trial by jury and to be further imprisoned against his will for a crime he did not commit.

139. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a) In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b) Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c) Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d) Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

e) Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 14, 2019

Respectfully submitted,

S/ Samuel C. DePaola
Samuel C. DePaola
Sim & DePaola, LLP
*Attorneys for Mr. Steinbergin*
Bar Number: SD0622
4240 Bell Blvd., Ste. 201
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
sdepaola@simdepaola.com