```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
TROY STEINBERGIN,                                                       :
                                                                        :
                                                                        :
                        Plaintiff,                                      :
                                                                        :      19-CV-1314 (JMF)
            -v-                                                         :
                                                                        :      OPINION AND ORDER
CITY OF NEW YORK et al.,                                                :
                                                                        :
                        Defendants.                                     :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In 2014, Troy Steinbergin was arrested and convicted in New York state court for selling cocaine to an undercover police officer. Four years later, his conviction was overturned on appeal based on the appellate court's view that his initial detention, which led to the undercover officer's positive identification of him as the perpetrator, had been unlawful. In this suit, he brings claims, pursuant to 42 U.S.C. § 1983 and state law, against three police officers who were involved in his arrest and the City of New York (the "City").[1] The parties now cross-move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the following reasons, Defendants' motion is granted and Steinbergin's motion is denied.

## BACKGROUND

The relevant facts, drawn from the admissible materials that the parties submitted in connection with this motion, are either undisputed or described in the light most favorable to Steinbergin. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

---

[1] The operative Complaint also names ten John and Jane Does as defendants, ECF No. 21 ("Am. Compl."), ¶¶ 15-16, but they have never been identified or served.

On June 21, 2014, three officers of the New York City Police Department — including two undercover officers, identified as Undercover Officer 0076 ("UC 0076") and Undercover Officer 0039 ("UC 0039") — conducted a "buy-and-bust" operation at 1760 Lexington Avenue, where Steinbergin then lived. *See* ECF No. 57-1 ("Buy Rep."); ECF No. 51-11 ("Steinbergin Dep."), at 76; ECF No. 51-10 ("UC 0039 Dep."), at 49. Around 7:05 p.m., UC 0076 entered the building and, in exchange for $30 in prerecorded buy money, purchased three foil packets of cocaine from a man in a stairwell of the building. *See* Buy Rep.; ECF No. 51-8 ("UC 0076 Dep."), at 86-87, 96. UC 0076 then left and reported the transaction to the field team, describing the suspect as a "[l]ight skinned[,] male[,] black[,] wearing a black shirt with red lettering on the front of it." ECF No. 51-4 ("Suppression Hr'g Tr."), at 6; *see also* Buy Rep.

Approximately five minutes after the drug buy, at around 7:10 p.m., Detective Jamal Hairston arrived at 1760 Lexington Avenue and saw Steinbergin standing outside the building, wearing a black shirt with red lettering. *See* Suppression Hr'g Tr. 6-7, 15, 18; ECF No. 51-9 ("Hairston Dep. Excerpt I"), at 148; ECF No. 54-1 ("Hairston Dep. Excerpt II"), at 167-68. Detective Hairston stopped Steinbergin, who seemed "angry" about being questioned; that prompted Detective Hairston to place Steinbergin in handcuffs. ECF No. 57-2 ("Hairston Dep. Except III"), at 150, 152-54. A few minutes later, UC 0076 viewed Steinbergin from a distance and identified him as the person from whom he had purchased the drugs, which he then communicated to Detective Hairston. *See* Suppression Hr'g Tr. 7-8; UC 0076 Dep. 101-03. For additional confirmation, Detective Hairston then took a photograph of Steinbergin and texted it to UC 0076, who responded, "Pos. Thanks." ECF No. 51-1; Suppression Hr'g Tr. 7-8; Hairston Dep. Excerpt II, at 184. Steinbergin was searched at the scene and again at the police precinct, *see* Hairston Dep. Excerpt II, at 168-69, but neither drugs nor any of the prerecorded buy money

was found, *see* Suppression Hr'g Tr. 7-8, 18-20; ECF No. 51-6 ("Dismissal"), at 1-2. Steinbergin denies that he sold drugs to anyone that day — or ever at 1760 Lexington Avenue. *See* Steinbergin Dep. 74.

Steinbergin was initially charged in a criminal complaint bearing Detective Hairston's signature, *see* ECF No. 54-4, and later indicted by a grand jury on the charge of criminal sale of a controlled substance, *see* ECF No. 51-3 ("Indictment"). Thereafter, Steinbergin moved to suppress UC 0076's positive identification. The trial court denied the motion, ruling that Detective Hairston had reasonable suspicion to stop Steinbergin; that it was "not improper" to place him in handcuffs as a safety measure during the investigatory stop; and that UC 0076's subsequent positive identification created probable cause for an arrest. Suppression Hr'g Tr. 31-33. On April 22, 2015, following a jury trial, Steinbergin was convicted of criminal possession of a controlled substance and, on November 30, 2015, was sentenced to four years in prison, followed by three years of supervised release. *See* Dismissal 3. He was released on parole on November 16, 2017. *See id.*

On March 27, 2018, the New York Appellate Division reversed Steinbergin's conviction and remanded the case for a new trial, preceded by an independent source hearing. *See People v. Steinbergin*, 73 N.Y.S.3d 547 (1st Dep't 2018). The Appellate Division reasoned that Steinbergin's slightly "irate" demeanor did not justify the use of handcuffs as a safety measure during an investigatory stop. *Id.* at 548. It declined to consider the State's alternative argument that Detective Hairston already had probable cause to arrest Steinbergin when he placed Steinbergin in handcuffs because the trial court had ruled in Steinbergin's favor on that issue. *Id.* (citing *People v. Concepcion*, 953 N.E.2d 779, 780 (N.Y. 2011) (noting that New York Criminal

3

Procedure Law Section 470.15(1) bars the Appellate Division "from affirming a judgment, sentence or order on a ground not decided *adversely* to the appellant by the trial court")).

Although the Appellate Division left open the possibility of retrial, on remand the State recommended dismissal of the charges against Steinbergin on the ground that the relevant officers had "little to no memory of the circumstances of th[e] drug sale," so "[t]he People would not be able to establish beyond a reasonable doubt that Undercover Officer 76 purchased narcotic drugs from the defendant." Dismissal 5.  On October 9, 2018, the state trial court granted the State's request and dismissed all charges against Steinbergin.  ECF No. 54-2.  The Certificate of Disposition provides that the dismissal "is a termination of the criminal action in favor of the accused and pursuant to Section 160.60 of the Criminal Procedure Law 'the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status occupied before the arrest and prosecution.'" *Id.* (capitalization modified) (quoting N.Y. Crim Proc. Law § 160.60).

On November 7, 2018, Steinbergin filed a notice of claim with the New York City Comptroller.  *See* ECF No. 51-7; ECF No. 52 ("Defs.' Mem."), at 8; ECF No. 56 ("Pl.'s Mem. & Opp'n"), at 14.  On February 11, 2019, he filed this action against the City, Detective Hairston, UC 0076, UC 0039, and ten John or Jane Does.  ECF No. 1.  In the operative Complaint, he brings the following claims, pursuant to Section 1983, against Detective Hairston, UC 0076, and UC 0039: false arrest and false imprisonment; malicious prosecution; malicious abuse of process; denial of the right to a fair trial; and failure to intervene.  *See* Am. Compl. ¶¶ 88-92, 102-08, 113-16, 124-30, 135-39.  He also brings parallel claims under state law against the individual Defendants and the City, except that he does not bring a claim for false arrest and false imprisonment under state law.  *Id.* ¶¶ 93-101, 109-12, 117-23, 131-34.

4

**LEGAL STANDARDS**

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In ruling on a motion for summary judgment, a court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where, as here, both sides move for summary judgment, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)). To defeat a motion for

summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## DISCUSSION

At the outset, some of Steinbergin's federal claims can be easily and swiftly dismissed. In their initial memorandum of law, Defendants argued that all federal claims against UC 0039 should be dismissed because there is no evidence in the record that the undercover officer was personally involved in the alleged deprivation of Steinbergin's rights, as required for liability under Section 1983. *See* Defs.' Mem. 20 (citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)). Additionally, they argued that Steinbergin's failure-to-intervene claims failed as matter of law because, among other things, Detective Hairston and UC 0039 were not present for the alleged drug transaction and had no knowledge of the events but for information they received from UC 0076. *See id.* at 17-18. Steinbergin did not respond to either of these arguments in his opposition or reply memoranda of law. *See generally* Pl.'s Mem & Opp'n; ECF No. 61 ("Pl.'s Reply"). In light of that failure, these claims are dismissed as abandoned. *See, e.g.*, *Jackson v. Fed. Exp.*, 766 F.3d 189, 194-95 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *see also, e.g.*, *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court may, and generally will, deem a claim

6

abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted) (citing cases)).

That leaves Steinbergin's state-law claims and the following Section 1983 claims against Detective Hairston and UC 0076: false arrest and false imprisonment; malicious prosecution; malicious abuse of process; and denial of the right to a fair trial.  The Court will address each federal claim in turn and then the state-law claims.

### A.  False Arrest and False Imprisonment

Steinbergin's federal claim for false arrest and false imprisonment fails for two independent reasons.  First, it is time barred.  "[C]ourts look to state law for the length of the limitations period" for a Section 1983 claim.  *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).  The statute of limitations for Section 1983 actions arising in New York is three years.  *See Owens v. Okure*, 488 U.S. 235, 250-51 (1989); N.Y. C.P.L.R. § 214(5).  By contrast, "the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles."  *McDonough*, 139 S. Ct. at 2155 (internal quotation marks omitted).  Significantly, unlike claims for malicious prosecution and the denial of the right to a fair trial, *see, e.g.*, *id.* at 2156, false arrest and false imprisonment claims accrue as soon as the plaintiff is detained pursuant to legal process, *see Wallace v. Kato*, 549 U.S. 384, 397 (2007).  Thus, "a cause of action for false imprisonment begins at least by the point a criminal defendant is arraigned on charges."  *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017).  Here, there is no dispute that Steinbergin was arraigned on June 22, 2014.  *See* ECF No. 58 ("Defs.' Opp'n & Reply"), at 6.  And, at a minimum, he was plainly detained pursuant to legal process no later than April 22, 2015, when he was convicted.  *See* Dismissal 3; *accord* Am. Compl. ¶ 67.  Yet he

did not file this lawsuit until February 11, 2019, long after the statute of limitations had run its course. Thus, his false arrest claim is time barred.

Relying on *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994), which held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated," Steinbergin argues that his false arrest claim did not accrue until his conviction was invalidated. *See* Pl.'s Mem. & Opp'n 8-10. But the Second Circuit expressly rejected that argument in *Watson*, ruling that the district court had "err[ed]" in concluding that the question of when the plaintiff's false imprisonment claim had accrued was governed by *Heck*. *Watson*, 865 F.3d at 130. Instead, the Court held, "the proper framework is provided by *Wallace v. Kato*." *Watson*, 865 F.3d at 130-31. Nor did the Supreme Court's recent decision in *McDonough* "abrogate[]" *Wallace*, as Steinbergin contends. Pl.'s Reply 3. In fact, the *McDonough* Court explicitly reaffirmed *Wallace*'s holding that "the [statute of] limitations period begins to run on a § 1983 claim alleging an unlawful arrest under the Fourth Amendment as soon as the arrestee becomes detained pursuant to legal process, not when he is ultimately released." *McDonough*, 139 S. Ct. at 2159 (internal quotation marks omitted). Accordingly, Steinbergin's false arrest and false imprisonment claim must be and is dismissed as time barred.

Second, and in any event, Detective Hairston and UC 0076 are entitled to qualified immunity with respect to Steinbergin's claim for false arrest and false imprisonment. It is well established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks omitted). As a general matter, "probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and internal quotation marks omitted). Even in the absence of probable cause, however, a law enforcement officer is entitled to qualified immunity if "*arguable* probable cause" existed — that is, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well[-]established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (first emphasis added) (internal quotation marks omitted); *see also Kass v. City of New York*, 864 F.3d 200, 205-07 (2d Cir. 2017) (holding that officers were entitled to qualified immunity because there was arguable probable cause without reaching the question of whether there was actual probable cause).

That is the case here. That is, Detective Hairston and UC 0076 are entitled to qualified immunity because, at a minimum, arguable probable cause to arrest Steinbergin existed even before UC 0076 identified him. Detective Hairston arrived at the scene only a few minutes after the drug sale, and he saw Steinbergin standing in front of the building wearing distinctive clothing matching UC 0076's description of the suspect's clothing. Given the proximity in time and location to the crime and the fact that Steinbergin's distinctive attire matched the suspect's, a reasonable officer in Detective Hairston's position could have concluded that Steinbergin had sold cocaine to UC 0076 as soon as he saw him. *See Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000) (holding that "[i]t is not unreasonable for police officers to rely on the accounts provided by other officers at the scene" in "making the probable cause determination"); *Falls v. Rude*, No. 17-CV-1339 (VB), 2019 WL 3715087, at *8 (S.D.N.Y. Aug. 7, 2019) (relying on "a particularly distinctive feature of plaintiff's clothing" and the fact that he was observed

9

"traveling in the direction in which the suspect was reportedly heading" to hold that defendants were entitled to qualified immunity on the plaintiff's false arrest claim).

For each of these reasons, Steinbergin's federal claim for false arrest and false imprisonment fails as a matter of law.

**B. Malicious Prosecution**

Next, Steinbergin brings a claim for malicious prosecution. In order to prevail on a constitutional tort claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). To succeed on a claim of malicious prosecution under New York law, a plaintiff must demonstrate: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks omitted). The existence of probable cause "is a complete defense" to the claim. *Id.* Moreover, where a prosecution begins with the return of an indictment by a grand jury, the indictment "creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013); *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000); *Celestin v. City of New York*, 581 F. Supp. 2d 420, 433 (E.D.N.Y. 2008).

Applying these standards here, and drawing all inferences in Steinbergin's favor, the Court concludes that the malicious prosecution claim fails for two reasons. First, Steinbergin was indicted; indeed, he was indicted twice, by two different grand juries. *See* Dismissal 2-3; Indictment. That gives rise to a presumption of probable cause for his prosecution, and

10

Steinbergin fails to rebut this presumption with any evidence of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (internal quotation marks omitted). Steinbergin's sole argument to the contrary is that his own testimony "that he never sold any drugs . . . to defendant Undercover Officer 76" creates a genuine issue of material fact on this score. Pl.'s Mem. & Opp'n 17. But it is well established that "the law . . . require[es] a malicious prosecution plaintiff to do more than simply prevail in a credibility contest with his accuser." *Rothstein v. Carriere*, 373 F.3d 275, 295 (2d Cir. 2004); *see also Williams v. City of New York*, 916 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) (rejecting a malicious prosecution claim under nearly identical circumstances). It follows that the evidence is also insufficient to establish malice, as Steinbergin relies solely on the proposition that malice can be inferred from the lack of probable cause. *See* Pl.'s Mem. & Opp'n 19. Put simply, without more, Steinbergin's denial that he engaged in the drug sale is not "a sufficient basis for a reasonable jury to conclude that the defendants acted with malice." *Williams*, 916 F. Supp. 2d at 243.

### C. Malicious Abuse of Process

Next, Steinbergin brings a claim for malicious abuse of process. It too is time barred. A plaintiff need not prove favorable termination in order to establish a malicious-abuse-of-process claim under federal law. *See Heck*, 512 U.S. at 486 n.5. Accordingly, such a claim "[o]rdinarily . . . accrues at such time as the criminal process is set in motion — typically at arrest," but not "before such time as plaintiff is aware, or ought to be aware, of those facts providing a basis for his claim." *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.); *see also Hadid v. City of New York*, 730 F. App'x 68, 71 (2d Cir. 2018) (summary order) (holding that the plaintiff's claim for malicious abuse of process accrued when

11

he was arrested, not when his conviction was overturned on appeal). Here, Steinbergin does not contend, and there is no evidence to show, that he was unaware of any facts underlying his claim until after his arrest; accordingly, his claim accrued on June 21, 2014, when he was arrested. *See Duamutef*, 956 F. Supp. at 1118. Because he did not bring this action until February 11, 2019, well after the three-year statute of limitations for Section 1983 claims had expired, the claim must be and is dismissed as time barred.

### D.  Denial of the Right to a Fair Trial

Steinbergin's final federal claim is for the denial of the right to a fair trial. To prevail on such a claim under federal law, a plaintiff must establish, among other things, that an "investigating official . . . fabricate[d] evidence." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Significantly, a plaintiff cannot survive summary judgment merely by establishing a genuine issue of fact as to the veracity of the information that the officer forwarded to prosecutors. *See Hewitt v. City of New York*, No. 09-CV-214 (RJD) (MDG), 2012 WL 4503277, at *6, *11 (E.D.N.Y. Sept. 28, 2012) (granting summary judgment where the "[p]laintiff point[ed] the Court to no evidence of ill will or malice on the part of" the defendant officer, nor any "arguable motivation to fabricate"), *aff'd*, 544 F. App'x 24 (2d Cir. 2013) (summary order); *see also Bennett v. Vidal*, 267 F. Supp. 3d 487, 498 (S.D.N.Y. 2017) ("[A] mere difference in testimony between the defendant [officer], the plaintiff, and the plaintiff's mother of what occurred on the day of the arrest is not sufficient evidence to create a genuine dispute of material fact as to whether [the officer] intentionally falsified information or fabricated evidence."). In light of that proposition, Steinbergin's claim must be dismissed, as he fails to identify any

evidence — other than his own denial that he sold drugs to UC 0076 — to establish that any officer intentionally falsified information or fabricated evidence. *See* Pl.'s Mem & Opp'n 19-20.

### E.  State-Law Claims

That leaves only Steinbergin's state-law claims. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) (Bianco, J.) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted) (citing cases)).

In their initial memorandum of law, Defendants asked the Court to decline supplemental jurisdiction over Steinbergin's state-law claims if it dismissed his federal claims, *see* Defs.' Mem. 1 n.1, and Steinbergin did not respond to that request. On that basis alone, the Court

13

would be on firm ground declining to exercise supplemental jurisdiction over the state-law claims. But separate and apart from Steinbergin's silence, the Court concludes that the balance of factors to be considered — judicial economy, convenience, fairness, and comity — point toward declining to exercise supplemental jurisdiction now that all federal claims have been dismissed. Among other things, whether Steinbergin's state-law claims are timely and whether — if his claims against any of the individual Defendants survive — there is a basis to hold the City liable as well are questions "best left to the courts of the State of New York." *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001). Accordingly, Steinbergin's state-law claims are dismissed without prejudice to his refiling them in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. It follows that Steinbergin's cross-motion for summary judgment must be and is DENIED. The Clerk of Court is directed to terminate ECF Nos. 49 and 56, to enter judgement for Defendants on all claims (in the case of the state-law claims, without prejudice to Steinbergin's refiling them in state court), and to close this case.

SO ORDERED.

Dated: February 4, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge